# COURTS OF APPEALS

OF THE

# STATE OF MISSOURI,

MARCH TERM, 1910.

*(Continued from Volume 144)*

PAUL RICHTER et al., Appellants, v. UNITED RAILWAYS COMPANY, of St. Louis, Respondent.

**Springfield Court of Appeals, June 6, 1910**

1. **PRACTICE: Motion for New Trial: Inconsistent Grounds for Sustaining Motion.** Where a trial court sustains a motion for a new trial on the ground that it erred in overruling the demurrer to plaintiff's evidence, and also on the ground that the verdict is against the weight of the evidence, the grounds are inconsistent and only the first can be considered by the appellate court (following Crawford v. Stock Yards Co., 215 Mo. 394).

2. ———: ———: **Improper Remarks of Trial Court.** A trial court sustained a motion for a new trial on the ground that remarks made by it in the presence of the jury were prejudicial to defendant. *Held*, that the trial court was in a better position to judge the effects of its remarks upon the jury than the appellate court, and it not appearing that it had abused its discretion in sustaining the motion, its ruling will not be disturbed on appeal.

145 App.] (1)

3. ———: ———: **Discretion of Trial Court in Sustaining Motion.** A trial court must be allowed a wide discretion in the matter of sustaining a motion for a new trial, and unless it should appear that it had made a mistake in the construction of the law, or that its discretion in sustaining the motion had been abused, its action in that regard will not be reversed.

4. ———: ———: ———: **Exceptions.** A trial court sustained a motion for a new trial on the ground that remarks made by the court before the jury were prejudicial to defendant. Plaintiff appealed and made the point that defendant did not at the time take any exception to the remarks. *Held,* that an exception was not necessary where the motion was sustained, but that it would have been necessary to save the point for review in the appellate court, in case the motion had been overruled.

5. ———: ———: **New Trial Granted by Court on Its Own Motion: Exceptions.** The court before whom the case is tried may, of its own motion, review its own errors, if any, committed in the trial of the case and, in doing this, may review the entire case and if, in his judgment, error prejudicial to either party was committed in the trial, he may set the verdict aside, without any motion being filed for that purpose by either party; and it is not necessary to show that an error which the court itself recognized and acted upon was excepted to by the party at the time the error was committed.

6. **STREET RAILWAYS: Negligence: Violation of Speed Ordinance: Burden of Proof.** In a suit against a street car company for killing a person at a place where a city ordinance required the cars to run not to exceed a specified rate of speed, the burden of proof is upon the plaintiff to show: (1) that the car of defendant struck and injured deceased; (2) that the injury occurred at a place where the ordinance forbade excessive speed, and that at the time of the accident the car was running in violation of said ordinance; (3) that the injury resulted from such violation.

7. **EVIDENCE: Circumstantial Evidence.** A case may be made out by circumstantial evidence, but the circumstances relied on must be consistent with each other and, in a civil action, must tend in a substantial way to support the claim.

8. ———: ———: **Negligence: Street Railways.** In an action against a street railway company for negligently running over and killing plaintiffs' son, there were no eye witnesses to the accident and circumstantial evidence was relied on by plaintiffs. *Held,* that the real test to be applied in determining the sufficiency of the evidence to go to the jury is whether or not

the circumstances proven make it probable and justify a reasonable inference that the injury occurred as plaintiffs alleged it did.

9. ———: ———: ———: ———: **Sufficiency of Evidence.** In a suit against a street railway company for negligently running over and killing plaintiffs' son who, after alighting from defendant's car at a crossing, was alleged to have been struck by another car coming from the opposite direction the evidence, though circumstantial, is examined and held sufficient to go to the jury as tending to show the running of the car at an excessive rate of speed in violation of the ordinance, and failure to sound the gong, and that the excessive rate of speed caused the injury.

10. **PRESUMPTIONS: Ordinary Care.** When a person was run over and killed by a street car, in the absence of any proof as to what he was doing at the time of the accident, the law will presume that he was using ordinary care for his own safety.

11. **CONTRIBUTORY NEGLIGENCE: Evidence.** Contributory negligence cannot be considered by a jury unless the evidence tends to sustain it.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*A. A. Paxson* for appellants.

(1) The first ground for sustaining defendant's motion for a new trial is not good. (a) Because no objection or exception was made to the remarks of the court at the time. (b) Because said remarks on their face were not prejudicial to defendant. If they were prejudicial to either party it was to the plaintiffs. Nall v. Railroad, 97 Mo. 75; Railway v. North, 31 Mo. App. 355; Walsh v. Drayage Co., 40 Mo. App. 399; Oberbeck v. Mayer, 59 Mo. App. 293; Dietring v. Transit Co., 109 Mo. App. 526. (2) The second ground assigned by the trial court is killed by the third ground assigned. These two grounds are held by the Supreme Court to be contradictory of each other and the appellate court will consider the case as if only the one ground, that there was no evidence, was meant. Crawford v. Stock

Yards Co., 215 Mo. 394; Ordelhide v. Land Co., 208 Mo. 244; Homuth v. Railroad, 129 Mo. 642. (3) The court did not err in refusing defendant's instruction for a directed verdict. Loftus v. Railroad, 220 Mo. 470; King v. Railroad, 211 Mo. 14; Moore v. Transit Co., 194 Mo. 1; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Soeder v. Railroad, 100 Mo. 673; Schereth v. Railroad, 96 Mo. 509; Keim v. Railroad, 90 Mo. 314; Steinmann v. Transit Co., 116 Mo. App. 673; Heintz v. Transit Co., 115 Mo. App. 667; Story v. Transit Co., 108 Mo. App. 424; Flori v. St. Louis, 3 Mo. App. 232.

*Boyle & Priest, Morton Jourdan* and *T. E. Francis* for respondent.

(1) The granting of one new trial rests within the sound discretion of the trial court, and its action in that regard will not be disturbed on appeal unless its power was abused. Rodan v. Transit Co., 207 Mo. 406; Seeger v. Silver Co., 193 Mo. 407; Stetzler v. Railway, 210 Mo. 711. (2) The remarks made by the court in the presence of the jury, in passing upon the demurrer, were prejudicial to the defendant in that (a) they constituted a comment on the evidence. 21 Ency. Pl. and Pr., 95, 994; 1 Blashfield's Instructions to Juries, 106; Zander v. Railroad, 206 Mo. 445; Huff v. Railroad, 213 Mo. 495; (b) and contained an incorrect statement of the law applicable to the case. Schmidt v. Transit Co., 120 S. W. 96; Bluedorn v. Railroad, 121 Mo. 269. (3) It is within the discretionary power of the court to set aside the verdict on the ground it made improper remarks, even though such remarks were not excepted to at the time. Parker v. Britton, 133 Mo. App. 273; Mill Co. v. Transit Co., 122 Mo. 258; Lowell v. Davis, 52 Mo. App. 342. (4) The demurrer to the evidence should have been sustained. Evans Brick Co. v. Railroad, 17 Mo. App. 624; Moly-

neux v. Railway, 81 Mo. App. 25; Warner v. Railroad, 178 Mo. 125; Schmidt v. Transit Co., 120 S. W. 96; Reno v. Railroad, 180 Mo. 469; Oglesby v. Railroad, 177 Mo. 272; Byerly v. Light Co., 130 Mo. App. 603; Goransson v. Mfg. Co., 186 Mo. 300; Graefe v. Transit Co., 123 S. W. 835; Morgan v. Mining Co., 136 Mo. App. 243.

COX, J.—This is an action for damages for the death of plaintiff's minor son, Paul Richter, Jr., who, it is alleged, was struck and killed by a street car, operated by defendant in the city of St. Louis.

The petition alleges that the accident which caused the death of their son, happened at Louisville and Oakland avenues, just south of Forest Park, in the southwestern part of the city of St. Louis. That on the 9th day of October, 1906, at about seven o'clock in the evening, plaintiff's son was a passenger upon one of defendant's west-bound cars, running on or near Oakland avenue, and when said car reached a point on Oakland avenue where Louisville avenue intersects said Oakland avenue at right angles, plaintiff's son caused said car upon which he was riding westwardly to stop and discharge him at said point. He then proceeded southwardly on Louisville avenue, on his way home, and, in order to do so, was compelled to cross over the south track of said railway company, on or near Oakland avenue, and, in doing so, was struck by one of defendant's east-bound cars, and received injuries from which he died on or about October 10, 1906.

On November 16, 1907, plaintiffs filed their petition, and thereafter on the 4th day of February, 1908, filed an amended petition which pleads the three-mile ordinance, failure to sound the gong, the fifteen-mile ordinance and the vigilant watch ordinance.

The court, by instruction, cut down the issues to the first alleged acts of negligence, to-wit: the violation of the three-mile limit and failure to sound the gong

or  ring the bell.  The answer was a general denial. No eye-witness to the actual striking of the boy, by the car, was produced.  At the close of plaintiffs' case defendant offered an instruction in the nature of a demurrer to the evidence which was refused.  Defendant offered no evidence.  Trial by jury, verdict for plaintiffs in the sum of five thousand dollars.  Defendant filed a motion for a new trial, which was sustained by the court, and plaintiffs have appealed.

The reasons assigned by the court for sustaining defendant's motion for a new trial are as follows:

"1st.  The remarks of the court in the presence of the jury, in passing upon defendant's instruction in the nature of a demurrer to the evidence, were prejudicial to defendant.

"2nd.  The verdict of the jury is against the weight of the evidence.

"3rd.  The court erred in refusing defendant's instruction offered at the close of plaintiffs' case."

We notice first that the second and third grounds recited by the court as reasons for sustaining the motion for a new trial are that the verdict is against the weight of the evidence, and that the court erred in refusing to sustain a demurrer to the testimony.  We shall consider these two questions together, and, in doing so, we call attention to the late decisions of the Supreme Court as to the proper procedure in the appellate court in a case in which both of these grounds are recited as grounds for sustaining a motion for a new trial.

In Gould v. St. John, 207 Mo. 619, 106 S. W. 23, a motion for new trial was sustained, and the order sustaining it recited that it was by reason of the error of the court in overruling a demurrer to the evidence, and for the further reason that the verdict was against the weight of the evidence.  In discussing the questions, Division No. 2 of the Supreme Court, speaking through Judge BURGESS, said, "The court, unless it abused its

discretion in so doing, had the right to grant a new trial upon either ground." Then sustained the action of the court in granting a new trial on the ground that the verdict in that case was against the weight of the evidence. In Crawford v. Stock Yards Co., 215 Mo. 394, 114 S. W. 1057, the court in sustaining the motion for a new trial recited that it was because of error in overruling a demurrer to the testimony, and because the verdict was against the weight of the testimony, as was done in Gould v. St. John, supra, and in the latter case, Division No. 1 of the court, speaking through Judge VALLIANT, held that these two grounds were inconsistent and contradictory. The one meaning that the court had weighed the evidence and found that the verdict was against the weight of the evidence, and the other meaning that there was no evidence to weigh, and then held that in such case, the appellate court would consider the case as if only the one ground, that there was no evidence to support the verdict, was meant. Gould v. St. John was decided December 10, 1907. Crawford v. Stock Yards Co. was decided December 23, 1908.

In the opinion in the Crawford case no mention is made of the former case of Gould v. St. John, but the opinion of the court in the Crawford case is in direct conflict with the opinion of the same court in the Gould case, and must be held to have overruled it, although it be not mentioned, and, as the Crawford case contains the last utterance of the Supreme Court on that question, it is our duty to follow it in this case, and hence we shall disregard the assignment that the verdict was against the weight of the evidence, and direct our attention to the demurrer to the testimony.

In determining whether the evidence was sufficient to send the case to the jury, the rules of law relating thereto are so well-settled that citation of authorities is not necessary, and may be said to be this. That the burden of proof was upon the plaintiff to show first,

that the car of defendant struck and injured the deceased; second, that the injury occurred at a place where passengers got on and off the car, and that at the time of the accident, the car was running in excess of three miles per hour, and failed to sound a gong; third, that it was the excessive rate of speed at which the car was running that caused the injury.

In this case there was no eye-witness to the accident, but it is well settled that the plaintiffs may make out their case by circumstantial evidence, and the rule is that when a party relies upon circumstantial evidence, the circumstances relied upon must be consistent with each other, and, in a civil action, must tend in a substantial way to support the claim of plaintiff. In determining whether or not the circumstances proven did tend, in a substantial way, to support the claim of plaintiff, the real test to be applied is whether or not the circumstances proven make it probable and justify a reasonable inference that the injury occurred as plaintiffs allege that it did.    Foster v. Missouri Pacific Railway, decided by us at this term.  No general rule can be laid down that will cover all cases, but each case must stand or fall upon its own particular facts.

Turning now to the question as to whether or not the car of defendant struck and injured the deceased, the evidence shows that deceased resided some distance south of the point where the accident occurred.   That it was his usual custom, in going and returning from the business part of the city, to board the cars and alight from them at this point.   That on the evening of the accident he was seen on board the car going west at Tamm avenue, one block east of Louisville avenue, where the accident occurred.   That the car on which he was riding stopped at Louisville avenue, but no one saw him alight.   About this time a car on defendant's track, located five feet south of the track on which deceased had been riding, came from the west and passed the car, on which deceased had been riding, at this

point. Shortly thereafter, the deceased was found lying three or four feet south of this south track, on which the east-bound car was passing, unconscious, severely injured, his right hip where it joins the sacrum being broken, the sacrum and lumbar section of the backbone being also broken, and the skull fractured. This east-bound car was stopped by sudden application of the brakes, the conductor and motorman alighted after the car had stopped and went back to where the deceased was lying. He was then picked up, put on another car, also east-bound, and taken to the hospital. The conductor of the car took the names and addresses of the passengers on the car. The deposition of G. I. Alley, the conductor of the car that it is contended struck the deceased, was offered by plaintiff and he testified that he remembered the accident at Oakland and Louisville avenue. That the night was dark, and that there was no wagon travel in that vicinity; no lights along the street; that Louisville avenue is out in the woods, and that there is very little getting on and off the cars there. That his car was just passing Louisville avenue when his attention was attracted to some unusual occurrence. That he noticed another car—a west-bound car—just pulling out, going west from Louisville avenue; that it had stopped at Louisville avenue, and had just started. The first thing that attracted his attention to anything unusual was that he felt a reverse of the car just as they passed Louisville avenue; the west-bound car had just pulled out as they passed it. That his car was going seven or eight miles an hour, stopped about a car and one-half from the stopping place, and they went back and picked up the boy, and found that he had been struck by the car. That they found him about three feet from the nearest rail on the south side of the track about ten feet east of the stopping place. That they put the body on the following car which had come up, and then went on. That the boy was groaning

and unconscious. That he got the names of passengers on his car and turned them into the office.

W. J. Volz testified that he was on the car that hurt or killed the boy. That it was October, 1906. George Shellhorn testified, "I was on the car on the night of October 9, 1906, that run over and killed the Richter boy." That he was asleep at the time of the accident, but woke up about that time. The conductor asked him his name and where he lived, and told him they had hit a man. H. J. Johnson testified that he was the conductor of the car on which the body of deceased was placed. In his testimony he said, "It was the car immediately ahead of my car that struck the boy. I do not remember the number of the car. It was a car of the United Railways." Thomas Crawford, the motorman of the car in charge of Mr. Johnson, testified, "I was the motorman of the car that brought the body of this boy to Sarah street. The first intimation that I had that anything had happened there when my car came up was the car ahead of me stopped. I came to about within a hundred feet of it and stopped my car on Louisville avenue. The front end of my car was opposite the body of the boy when I stopped. Mr. Alley and the motorman of the car came running down the track. Almost as I came to a stop, Alley was there with him." Alley was the conductor in charge of the car immediately in front of the one on which the body of deceased was placed. Being recalled Crawford testified as follows: "I am a motorman on the car that brought the body of Paul Richter, Jr., to Sarah street on the car that immediately followed the car that struck the boy."

Plaintiffs had filed a former suit which had been dismissed, and in that action defendant had filed an answer. That answer was offered by plaintiffs in the trial of this case. It was first a general denial; second, a plea of contributory negligence, alleging that the deceased had stepped upon the track immediately in front

of the moving car,  thereby rendering a collision between his body and the car unavoidable by the exercise of ordinary care upon the part of the motorman in charge of the car.

John D. Nicholson testified that he lived about a block east of Louisville avenue. That his house is one block "catacornered" distant from Oakland and Louisville avenue. That on the evening of October 9, 1906, a little before seven o'clock p. m. he was sitting in the house reading a paper and heard a scream. He got up and went and opened the door, saw a car had stopped down on the track there, very near north of his house, saw two men get off the car and walk back west toward Louisville avenue, and saw another car come up behind this one and stop at Louisville avenue.

We have quoted this testimony at considerable length for the reason that it is strenuously urged by counsel for defendant that there is no evidence by which the jury could find that the car of defendant struck the deceased, and for the further reason that if the jury were justified in finding that defendant's car did strike the deceased it renders the solution of the other two questions  involved in the determination of the propriety of the court's action in setting aside the verdict for the want of evidence to support it easier of solution. When we consider all this testimony together, the fact that this accident occurred at a street crossing, that this was the usual place for deceased to alight when returning home from the city, that he was seen on the car going west one block east of the point where the accident occurred, that this car stopped at Louisville avenue, that an east-bound car passed the car on which he was riding at this point, that these tracks were only five feet apart, that immediately thereafter he was found on the south side of the south track, that his right hip, sacrum, backbone and skull were fractured, that the conductor and motorman on the east-bound car that passed at that time stopped their

car, that just prior to this a scream was heard, that this conductor and motorman went back and picked up the body of deceased, placed it on another east-bound car, then returned to their own car, and this conductor then took the names and addresses of passengers on his car, and that this conductor and these passengers, in telling what they knew of the accident, spoke of their car as being the one that struck the deceased. Take this in connection with the fact that this was in an isolated part of the city where there was no wagon traffic, there would seem to be no possible way to account for this accident except that he had been struck by one of defendant's cars; hence, we find that the jury would have been warranted in finding the fact to be that defendant's car struck and injured the deceased.

As to the second fact the jury would have been required to find, that is, that the car was running in excess of three miles an hour at a point where the ordinance of the city required them to not exceed that rate, and that they failed to sound a gong, we have no difficulty. The ordinance of the city was introduced. The proof showed this accident to have occurred at a place where passengers got on and off the cars. Hence, there was no question but what it was the duty of defendant to not run in excess of three miles an hour, and in approaching the crossing to sound the gong to give warning of their approach. One of the passengers on the car which struck the deceased testified that he heard no gong sounded. The conductor testified that it was running seven or eight miles an hour. There was evidence, too, that the car ran from two hundred to three hundred feet after the brake was applied in the effort to stop it, and that a car running at the rate of three miles an hour could be stopped in a distance of three feet, and that one running eight miles an hour could be stopped in a distance of eight feet, and if all this is true, and it was also true that this car ran two hundred to three hundred feet after the application

of the brake, then this car must have been running at a terrific rate of speed at the time of the accident, and there is no question but that the jury would have been warranted in finding that no gong was sounded, and that the car was running in excess of three miles per hour.

This brings us to the last fact which the jury would have been required to find in order for their verdict to stand. That is, that it was the excessive rate of speed that caused the injury. It is contended by counsel for defendant that even though we consider that the east-bound car struck the deceased, and that it was running in excess of three miles an hour at the time, yet that the evidence does not show that the accident was caused by this excessive rate. In determining this question, like the others, we must look to the facts and surrounding circumstances and, if we can, place ourselves in the position of the jury, and then determine whether or not a fair inference could be drawn from the testimony that the injury resulted from the negligence of defendant in running the car at the excessive rate. We note first that the deceased was at that time about eighteen years of age, and, there being no evidence to the contrary, we assume that he was in fair health and as active as young men ordinarily are at that age. This fact alone would make it extremely improbable that if the car had been running at only three miles an hour that he would have been seriously injured even if struck by the car, and when we remember that when he was struck he was struck with a blow sufficiently hard to break his thighbone at the point where it joins the body, also breaking the sacrum and the lumbar vertebrae and fracturing his skull, it seems to us that not only would the jury have been warranted in finding that the excessive rate caused the injury, but that they could hardly have reached any other conclusion, for the nature of the injury, in connection with the testimony which shows that this car ran from two hundred to

three hundred feet after the brake was applied before it stopped, shows that this car must have been running at a fearfully dangerous rate of speed, and when it struck a grown young man and mangled him as this deceased was mangled, it would seem unreasonable to assign this result to any other fact than that of the excessive rate of speed at which the car was being run. This is especially true in the absence of any evidence that the injury could have been caused in any other way.

Finally it is contended that there being no evidence as to how this young man got on to the track, or what his position was at the time he was struck, that there is no way by which the jury could determine whether the accident was caused by the high rate of speed at which the car was being run, or whether it was caused by the deceased having suddenly stepped upon the track in front of the car. The difficulty of this position is that in the absence of any proof as to what the deceased was doing at the time of the accident the law will presume that he was using ordinary care for his own safety. Therefore, the jury would have no right to infer that the accident might have occurred by him stepping suddenly in front of a rapidly moving car, for if he had been guilty of such conduct, it would have been contributory negligence upon his part, and contributory negligence cannot be considered by a jury unless proof is offered tending to sustain it. The entire circumstances surrounding this injury, the fact that deceased was found near the track on the south side thereof, that he was struck by an east-bound car, the character of the injury, all go to discredit any possible theory of the accident except that it was caused by the reckless rate of speed at which the car was being operated.

We think on a careful consideration of this testimony that there was sufficient to send the case to the jury, and that it would have been error for the court

to have sustained a demurrer to the testimony, and for that reason it was error for him to sustain a motion for new trial upon that ground.

We come now to the consideration of the other ground on which the motion for new trial was sustained, namely: that the remarks of the court, in the presence of the jury, in passing upon defendant's instruction in the nature of a demurrer to the testimony, were prejudicial to the defendant. In the course of these remarks, the court said, in the presence of the jury, "That where a party is in the act of violating an ordinance or statute which prohibits the doing of a certain thing made by the statute negligence *per se,* that if another party is injured at the time, and while that ordinance or statute is being violated, the presumption of negligence arises and makes a prima-facie case." Then after quoting the testimony about the deceased being on the car, about it being his usual place to alight on his way home, the stopping of the car going east by applying the brakes in the nature of an emergency stop, commenting on the place where they stopped, then continued as follows: "Now, whether or not, to put it in the nature of a criminal statement of it, as to whether or not that is sufficient proof of the *corpus delicti* to send the case to the jury, I have very serious doubt. Of course, a proposition of that kind cannot always be determined with absolute certainty one way or the other. That being the case, the facts and circumstances surrounding it, those inferences that may be legitimately drawn from what did occur and what is proven, it is a question whether or not it is not a proper question for the jury. Gentlemen, you will proceed with the case."

The point is made by plaintiff in this case that defendant did not, at the time, take any exception to these remarks of the court, and, therefore, that question is eliminated. This would be true if the court had overruled the motion for new trial, and defendant were

here trying to reverse that action of the court by reason of these remarks, but that is not the condition of this case. In this case, the court sustained the motion for new trial, and, in doing this, if his action was erroneous and prejudicial to either party in the case, the court had the right to set the verdict aside as of its own motion, and having set it aside, the party who seeks to justify the court's action in sustaining the motion is not required to show that an error, which the court himself recognized and acted upon, was excepted to by the party at the time the error was committed. We understand the rule to be that the court, before whom a case is tried, may, of its own motion, review its own errors, if any, committed in the trial of the case, and, in doing this, may review the entire case, and if, in his judgment, error prejudicial to either party was committed in the trial, he may set the verdict aside without any motion being filed for that purpose by either party. This being true, the court's action, in this regard, is here for review the same as it would have been had exceptions been saved by the defendant at the time the remarks were made, the motion for new trial subsquently overruled, and the case brought here by defendant's appeal. This brings us to the consideration of the question as to whether the remarks of the court, in the presence of the jury, were prejudicial to defendant, and would justify the court in setting aside the verdict. The verdict in this case was not a unanimous one, but was concurred in by eleven jurors only. This indicates that the jury may possibly not have thought that the plaintiff had made a very strong case on the testimony. The evidence relied upon by plaintiff is entirely circumstantial, and there is no way by which we can measure the effect upon the jury of the statement by the court that when the accident occurred if the defendant was violating a law or ordinance which made the violation thereof negligence *per se* that a prima-facie case was made. The court who

presided at the trial, who heard the testimony, and who observed the jury and the conduct of the trial throughout, was of the opinion that the remarks he had made in the presence of the jury were prejudicial, and having acted upon that belief, and having set the verdict aside by reason of that fact, we are not disposed to interfere with his discretion in that matter, for the trial court must be allowed a very wide discretion in the matter of sustaining a motion for new trial, and when he does so his action in that regard will not be reversed, unless it should appear that he had made a mistake in the construction of the law, or that his discretion in sustaining the motion has been abused, and upon this ground we hold that the action of the court in sustaining the motion for new trial was warranted, and, for that reason, will affirm the judgment. All concur.