STROH v. JOHNS.

No. 43632.

Supreme Court of Missouri.
Division No. 2.

Jan. 11, 1954.

Motion for Rehearing or to Adjudicate, etc.,
Denied Feb. 8, 1954.

William J. Blesse, William Kohn, St. Louis, for appellant.

Wilbur C. Schwartz, St. Louis, for respondent. Joseph Nessenfeld, St. Louis, of counsel.

TIPTON, Judge.

In the circuit court of the city of St. Louis a jury returned a verdict in favor of appellant in the sum of $12,000 for the wrongful death of her husband, which was the result of a collision between an automobile in which deceased was riding and which was being driven by appellant, and an automobile driven by respondent. This collision took place at the junction of Highways 66 and 141 in St. Louis County. The trial court sustained respondent's motion for new trial on the ground that appellant's argument was prejudicial in that it was not within the issues submitted to the jury, and on the ground that instruction No. 1 was erroneous.

On the north shoulder of Highway 66 there is a traffic sign 728 feet east of Highway 141 which reads, "Slow to 35 Miles." West of this traffic sign is another sign which reads, "Junction Slow, 600 Feet." There is a third sign 435 feet east of Highway 141 which reads, "Jct., 66 [with arrows point upwardly] 141," with arrows pointing north and south. The next sign is a high blinker sign with the word "Crossroad"

on it. Highway 66 is a four-lane highway with the two south lanes for eastbound traffic and the two north lanes for westbound traffic. Highway 141 is 20 feet wide and runs north and south, with the east lane for northbound traffic and the west lane for southbound traffic. There is a stop sign about 12 feet south of the south edge of Highway 66, and there is also a stop sign north of Highway 66.

At the time of the collision, the appellant and her husband were on their way home from a ride in the country. Appellant was driving and her husband was on the front seat of the car with her. Just prior to the collision, the appellant was driving north on Highway 141. Appellant brought her car to a stop even with the stop sign south of Highway 66. A witness for appellant testified that respondent was going 60 to 70 miles an hour at the time of the collision. As appellant started up after making the stop, she noticed an eastbound truck on Highway 66, about to make a left hand turn into Highway 141. She nodded to the driver to go ahead and continued to move slowly into the intersection. While this truck was making the left turn, she looked to the east and saw what must have been the respondent's automobile about 350 to 500 feet from her. She was unable to estimate its speed but testified, "It didn't look like he was going fast enough that I couldn't get over the highway. * * * I knew there was slow signs there to thirty-five. I had plenty of time to get over." After seeing this car, she then glanced over to the northwest corner of this intersection and saw some automobiles on Highway 141 that were apparently stopping before crossing Highway 66. She again looked to the west and saw no cars in that direction. By this time her car was in the south lane for westbound traffic. She had been travelling 10 to 15 miles an hour. She again looked to the east and saw respondent's automobile coming very fast, about 40 to 50 feet from her. She tried to speed up her automobile in order to let respondent pass behind her, but her car was hit at the right rear wheel by respondent's auto-

mobile with such force that it turned appellant's automobile around so that when it came to a standstill it was facing south and was north of Highway 66. The impact caused the front door of her automobile to fly open and her husband fell out of the door. She fell out on top of him. He died that day from the injuries he there received. Respondent lost control of his car and came to a stop on Highway 66, about 300 feet west of Highway 141, after hitting another automobile that was eastbound.

Respondent's evidence tended to show that he approached Highway 141 at the same speed that other cars were travelling west on Highway 66. He testified that, in his best judgment, he was travelling about 35 to 40 miles an hour, that appellant slowed up after she started across Highway 66, and that is why he was prevented from passing to the rear of appellant's automobile with safety.

Appellant's attorney made the following statement during his opening argument to the jury: "I don't believe that there can be any doubt that the immediate, direct cause of this collision was the great speed of this (respondent's) automobile."

The trial court's order sustaining respondent's motion for new trial shows that the court was of the opinion that it was error to permit the above statement to be made over the objection of respondent because it was not within the issue of negligence submitted to the jury by the trial court's instructions.

At the request of appellant, the trial court gave three instructions. Instruction No. 1 was on primary negligence. It involved respondent's failure to keep a lookout ahead and laterally for traffic that might be moving on Highway 141, and the failure of respondent to slacken the speed of his car so as to avoid striking appellant's car. Instruction No. 2 submitted humanitarian negligence of respondent. The other instruction given at the request of appellant was on the measure of damages.

There were nine grounds of negligence alleged in appellant's petition, the first of which was the excessive rate of speed at which respondent was driving his automobile, yet appellant offered no instruction on excessive speed. She, therefore, abandoned that issue.

Excessive speed and failure to slacken speed are two separate specifications of negligence. " * * * the fact that the speed is negligent is not inconsistent with the idea that the speed can be slackened by the exercise of the highest degree of care so as to avoid a collision; that negligence in failing to stop or slacken the speed is not inconsistent with negligence in fast running." Hillis v. Rice, Mo.App., 151 S.W.2d 717, loc. cit. 724.

There was evidence in this record that respondent was driving his car at a high rate of speed. Of course, appellant had a right to argue the evidence and all reasonable inferences to be drawn therefrom as a circumstance in connection with the submitted issue of negligence. Lepchenski v. Mobile & O. R. Co., 332 Mo. 194, 59 S.W.2d 610; Gravemann v. Huncker, Mo.App., 71 S.W.2d 59; Marczuk v. St. Louis Public Service Co., 355 Mo. 536, 196 S.W.2d 1000. In other words, appellant had a right to argue speed as a circumstance shown on the issues of failure of respondent to slacken the speed. But, certainly, appellant could not argue speed as an independent ground of negligence under this record. Excessive or great speed was not a ground of negligence submitted to the jury.

We believe the trial court had a right to believe that the above quoted part of appellant's attorney's argument told the jury that they could return a verdict if they believed that the collision in question was directly caused by the great or excessive speed of respondent's automobile.

If the trial court had given an instruction on excessive speed as a ground of negligence, he could have used the same language used by the attorney for the appel-

lant, that if *"the immediate, direct cause of this collision was the great speed of this automobile,"* then the verdict should be for the plaintiff-appellant.

In the case of Phillips v. Vrooman, Mo. Sup., 251 S.W.2d 626, we held that a trial judge may reasonably construe the language used in an argument to the jury, and such determination need not be based solely on the language itself but should be interpreted in the light of other circumstances of the particular case.

■ For the sake of argument, we could admit the contention of appellant that the language, "that the immediate, direct cause of this collision was the great speed of this automobile," is but another way of saying failure to slacken the speed was the direct cause of the collision. Yet, under Phillips v. Vrooman, supra, the trial court could, under the circumstances of this record, interpret this language to mean that appellant was telling the jury that excessive speed was the direct and proximate cause of the collision, when the court did not instruct on that issue. Instructing the jury is, of course, the province of the court, and appellant's counsel, by argument, should not undertake to instruct the jury on the law. Casto v. Railway Express Co., Mo. App., 219 S.W.2d 276.

Appellant's attorney, in his opening statement, said: "We will also show that this collision was the result of this high and dangerous rate of speed. * * * Nevertheless this car, going at this terrific rate of speed, ran into the Stroh car, turned it around like a top, and that that resulted in the death of Mr. Stroh. * * * I believe, after you hear the evidence, you will be satisfied that this tragedy occurred as the result of the negligence of Mr. Johns in driving his automobile at such a high rate of speed at a dangerous intersection like that, and if so that Mrs. Stroh is entitled to recover for the death of her husband at least the amount sued for."

While there is no reference to reduction of speed in the opening statement made on behalf of appellant, apparently the trial court in the instant case, in considering the motion for new trial, believed that the above quoted portion of the argument of appellant, in effect, instructed the jury to return a verdict for appellant on an issue not submitted by the instructions, that is, excessive speed. "As stated by this court in Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297, loc. cit. 300(8–11), speaking of motions for new trial: 'When the motion *is sustained* and the requested relief is granted, on reviewing such action, in considering the grounds stated in the motion upon which this action is based "this court will be more liberal in upholding the court's action." Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471, 475.' " Carlisle v. Tilghmon, Mo.Sup., 159 S.W.2d 663, loc. cit. 665–666. See, also, Arnold v. Alton R. Co., 343 Mo. 1049, 124 S.W.2d 1092, 1094. We uphold the trial court's action in sustaining the motion for new trial as being within his sound discretion under assignment 16 of the motion for new trial.

■ Assignment 16 of respondent's motion for new trial is as follows: "Because the Court erred in permitting plaintiff's counsel, over the objection of defendant, to argue on issues abandoned by the plaintiff and which, by repetition, permitted the jury to infer that the defendant was negligent because, among other things, of alleged failure to obey warning signs along the highway, and to argue the speed of defendant's automobile following the impact after losing control of the car, all of which argument was calculated and intended to and did, in fact, prejudice the jury in favor of the plaintiff and against the defendant."

But appellant contends this assignment was specific and not general in that it was limited to the alleged failure to obey warning signs along the highway and the error in permitting appellant's counsel to argue the speed of respondent's automobile following the impact after losing control of the car.

We are of the opinion that this assignment cannot be given the strict interpreta-

tion that appellant contends. Appellant absolutely ignores the phrase, "among other things." This phrase must be given some meaning. Assignments of error in a motion for new trial should be given liberal construction. In the case of Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482, loc. cit. 485, we said:

"In the case at bar the motion for new trial was timely filed at the trial term. The complaint in this motion regarding the argument of defendant's counsel kept that matter in the breast of the court until the motion was acted upon. The continuance of the motion to a subsequent term carried the case over and clothed the court with the same authority and discretion it had at the trial term to grant a new trial for any of the causes alleged in the motion. This being true, the court, at the subsequent term, had authority to grant a new trial because of counsel's improper argument, even if no objection at all had been made thereto, because the court had such power at the trial term, and that power was preserved in the breast of the court and carried over to the subsequent term by the motion. A trial court 'has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, whether excepted to or not.' Noren v. American School of Osteopathy, 223 Mo. App. 278, 2 S.W.2d 215, 218. But where it is sought to convict the trial court of error in refusing to grant a new trial, appellate courts will not review the propriety of the court's action in refusing to grant the new trial, unless proper and timely objections were made to the matter complained of, and an exception saved to the alleged erroneous ruling at the time it was made. Richter v. United Railroad Co. of St. Louis, 145 Mo.App. 1, 129 S.W. 1055. Noren v. American School of Osteopathy, supra."

In passing we may state that under the record in this case all reference to speed in appellant's argument to the jury was objected to by respondent.

We hold assignment 16 is broad enough to sustain the trial court's ruling, even though his ruling was not made within thirty days after the end of the trial.

■ We will not prolong this opinion by reviewing the trial court's action in sustaining the motion for new trial upon the specified grounds of error in giving instruction No. 1. Counsel of the parties now have the benefit of respective attorneys' contentions and errors in this instruction, if any there are, and they may be avoided upon a new trial. Moreover, under the recent case of Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496, there should be no trouble in framing proper instructions at the next trial. Respondent also contends that instruction No. 1 should not have been given for the reason that the appellant was guilty of contributory negligence as a matter of law. Assuming, without deciding, that this is true, this would not dispose of the litigation for the reason that an instruction on humanitarian negligence was also given, to which respondent made no complaint.

The trial court's order sustaining the motion for new trial should be affirmed. It is so ordered.

All concur.