M. O. REED and J. R. YOUNG v. JOHN COLP, MONROE COLP and GEORGE HOUCK, Appellants.

Division One, July 3, 1908.

1. **REVIVOR: Death of an Appellant.** Where suggestion of death of one of three appellants (a trustee in the deed of trust sought to be cancelled) was made after the first submission of the cause on appeal and before a resubmission after motion for rehearing allowed, and where no steps are taken to enter the appearance of his personal representative, it will be assumed that a revivor has been abandoned. Under the circumstances a revivor is not an indispensable step to a continuation of the suit in the Supreme Court against the remaining defendants.

2. **BILL OF EXCEPTIONS: Amendment: No Jurisdiction.** Where the Court of Appeals had no jurisdiction over the appeal, it is precluded from taking any steps in the cause except to transfer it to the Supreme Court, and any order it may make granting appellants leave to amend their bill of exceptions by showing that motions for a new trial and in arrest were filed and exceptions saved to the overruling of the motions, can add no additional vitality or legality to proceedings in the circuit court making such amendments.

3. **———: ———: In Pursuance of Rule.** A rule of court to the effect that appellants were not required to save exceptions to the rulings of the court is not sufficient to show that exceptions were saved to the action of the court in overruling the motions for a new trial and in arrest. Where no exceptions were actually saved, and the bill of exceptions recited no exceptions

213 Sup—37

saved to the overruling of the motions, the trial court is not authorized to amend the bill by the fact that it had in force a rule which did not require exceptions to be saved and to the effect that exceptions were deemed to be saved to any adverse ruling of the court. Such a rule is not such a record entry as authorizes a *nunc pro tunc* order.

4. **JUDGMENT: Sales: Cancellation: Doing Full Equity: Reimbursement For Use.** Where the pleadings authorize a decree adjudging the sale of a sawmill to be fraudulent and the cancellation of the purchase notes and deed of trust given to secure them, and a reimbursement of the defendants for the use of the mill, the decree should include not only the return of the sawmill and the cancellation of the notes and deed of trust, but as a condition thereof that plaintiffs reimburse defendants for the use of the sawmill in the amount found by the chancellor to be the reasonable value for such use.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*L. R. Thomason* and *Martin L. Clardy* for appellants.

(1) A bill of exceptions, when filed, constitutes a part of the record, and may be amended by the court at the term, or any subsequent term, as any other part of the record may be amended, to correspond with what, in fact, occurred. Elliott, App. Proc., sec. 825. It has been properly said that the proceeding for the correction of a record is curative rather than creative, and that the theory is that the ruling involved was actually made, but not properly entered. It is when the record does not express what took place in the court that it may be amended to correspond with the facts. The rule as to the amendment or correction of bills of exception does not essentially differ from the rule which prevails in other cases where the amendment or correction of a record is sought. Elliott's Appellate Procedure, secs. 212, 213, 214, 219; Lefferts v. State, 6 Atl. 521; Morse v. Woodworth, 27 N. E. 1010;

Harris v. Tomlinson, 30 N. E. 214; Martin v. Railroad, 13 S. W. 765. Respondents appeared at the hearing of the motion to amend the record, and the record does not show that they entered any objection to the action of the court in making the amendments to correspond with the facts, or that they took any steps to have that action of the court reviewed by this court. (2) Even if there had been no bill of exceptions filed in the case, the judgment is erroneous upon the face of the record, as the judgment is not in accordance with the finding of the court. It appears that the court made a finding that defendants were entitled to $150 for rent of the mill which finding is ignored in the judgment of the court.

*Mozley & Wammack* for respondents.

LAMM, J.—This is a suit in equity to enjoin a sale under a deed of trust upon real estate belonging to plaintiffs and situate in Stoddard county, Missouri, and to cancel the notes secured thereby as void by reason of fraud and misrepresentation moving in their execution, and to remove the cloud upon plaintiffs' title arising from the record lien of said deed of trust. Defendants are the trustee, Houck, and the beneficiaries in the deed of trust, to-wit, John and Monroe Colp, doing business as the Colp Lumber and Machine Company.

The decree was for plaintiffs and defendants appeal.

At the April term of this court, 1906, the cause was submitted on argument and briefs. At its October term, 1906, an opinion was handed down, but a rehearing was granted. At the October term, 1907, counsel suggested the death of Mr. Houck and the cause was continued to the April term, 1908. At said April term it was resubmitted on the same briefs.

The petition sets forth that the notes were given for plaintiffs' purchase of a sawmill from the Colps, and the false representations (alleged with a *scienter*, and relied on in the dicker and sale), relate to the sawing capacity, the newness and market value of said mill.

Among other things, it is alleged that on discovering the covinous contrivances of the Colps in and about the sale and the deceit practiced in false representations leading up to it, plaintiffs offered to rescind the contract and to return the sawmill and its appurtenant machinery in as good condition as when received and to pay defendants a reasonable price for its use, demanded their notes and the satisfaction of the deed of trust securing the same, and that defendants refused the offer. Further, the petition states that: ''Plaintiffs now here in court offer to redeliver to defendants said sawmill and all machinery in connection therewith in as good condition as when received by plaintiffs.''

Denying the fraud and affirmatively pleading other matter not in point for our present purpose, the answer avers that plaintiffs have leased said mill to parties named and have collected the rent for their own use and benefit.

In its decree, the trial court found the allegations of the petition to be true (setting them forth), found further that: ''Plaintiffs *in court* offer to deliver said sawmill in as good condition as received and pay a reasonable price for use of said sawmill. That a reasonable price for use of said sawmill was $150.'' The decree then continues as follows: ''The court therefore decrees that defendant take this said sawmill, deliver up for cancellation said deed of trust and $1,800 note, together with the two $600 notes and that same be cancelled, that same are void and of no effect, that the cloud upon plaintiffs' title to said real estate be

and is hereby removed, that defendants take nothing for said notes and deed of trust and that the costs of this suit be adjudged against defendants.''

For reasons appearing later, the facts need not be stated. A sufficient statement to make intelligible questions of practice determined will appear in the body of the opinion.

I. The suggestion of the death of one of appellants, was made after the first submission and before the resubmission. No steps having been taken to enter the appearance of his personal representative, we shall assume that a revivor has been abandoned. Under the circumstances noted, a revivor is not an indispensable step to a continuation of a suit in the Supreme Court where one out of several appellants dies. [R. S. 1899, secs. 856-7.] Statutes somewhat similar were under exposition in Prior v. Kiso, 96 Mo. l. c. 315, *et seq.*, and that was the conclusion reached whether the statutes or the common law controlled. [See, also, Hunleth v. Leahy, 146 Mo. 408.]

II. The appeal in this cause was granted to the St. Louis Court of Appeals. On submission there, that court handed down the following opinion:

''The object of the suit is to set aside a deed of trust to land on the alleged ground of fraud in its procurement. Such a suit directly involves title to real estate within the meaning of the Constitution defining the jurisdiction of the Supreme Court. [Nearen v. Bakewell, 110 Mo. 645; Overton v. Overton, 131 Mo. 559; Scheer v. Scheer, 148 Mo. l. c. 448; Bonner v. Lisenby, 73 Mo. App. 562.] For the reason, therefore, that the jurisdiction of the subject-matter of this suit is by the Constitution of the State vested in the Supreme Court, the cause is transferred to that court.''

On the strength of that opinion, the cause came here.

While pending in the St. Louis Court of Appeals, it seems appellants there applied for and were granted leave to apply, *nisi,* to amend the bill of exceptions, so as to show for the first time the motions for a new trial and in arrest and that exceptions were saved severally in overruling them. At all events, we find among the papers a transcript of entries made on proceedings had on March 19, 1902, in the Stoddard Circuit Court, several terms after the appeal was granted and the original bill of exceptions was settled and filed, which seek to justify themselves by such leave. That transcript, omitting caption and certificate, follows, *totidem verbis*:

"Whereas appellant in the above-entitled cause did on heretofore, to-wit, the 10th day of March, A. D. 1902, file in the St. Louis Court of Appeals their application for leave to amend their bill of exceptions filed in this cause on heretofore, to-wit, August the 8th, 1901, and whereas the St. Louis Court of Appeals on the date aforesaid did grant leave to appellant to apply to the circuit court of Stoddard county, Missouri, to correct and amend said bill of exceptions filed by appellants as aforesaid so as to show that appellants file their motion for new trial and in arrest of judgment and took and saved their exceptions to the order of the court in overruling of said motion, provided that said court should further find from competent evidence that said motions were in fact filed and that said exceptions were in fact taken and saved by appellants:

"And whereas appellants have this day, to-wit, the 15th day of the March term of the circuit court of said Stoddard county, Missouri, presented their application for leave to amend their bill of exception in the manner and form aforesaid and both parties appearing by their attorneys said application being by the court taken up and the court being fully advised

doth find from the record that appellants on May the 30th, 1901, filed their motion for a new trial and in arrest of judgment and that on the date aforesaid said motions were by the court overruled and that appellants did take and save their exceptions to the actions of the court in overruling of their said motion and that by virtue of a rule of the circuit court of said Stoddard county appellants were not required to save their exceptions to the action of the court in overruling of their motion for a new trial and in arrest of judgment by matter of record, as under and by virtue of said rule all exceptions to the action of the court on such motions are deemed to be saved, which said rule was in force at the time of the action of the court in overruling of the motions for a new trial and in arrest of judgment filed by appellant in the above cause, but said exceptions were saved by appellants.

"Wherefore the application of appellants to correct their bill of exceptions is hereby sustained and leave granted appellants to correct said bill and said bill is corrected by adding thereto pages number 49, 50, 51 and the same is ordered made a part of the record in said cause as of the date of the filing of said bill showing the filing of such motions for new trial and arrest of judgment, the overruling of said motions and the exceptions by appellants to the action of the court."

The original bill of exceptions not only failed to contain exceptions saved to the overruling of the motions for a new trial and in arrest, but made no *call* for the motions.

The record entries in the original transcript showed motions for a new trial and in arrest were filed and overruled. They stopped short at that point, and properly so. However, in an additional transcript here, there are several pages which, though not numbered, we construe to be the "49-50-51" referred to

in the transcript of the proceedings of March 19, 1902, *supra.* These additional pages embody the motions for a new trial and in arrest, and set forth entry rulings on those motions so reconstructed as to show that *exceptions were saved to overruling them.* It is plain that this showing sprang into record life as part and parcel of the general scheme to amend.

On this record, the following observations are due:

(a) In the first place, the proceedings of the Stoddard Circuit Court on March 19, 1902, can receive no additional vitality or legality from the leave narrated therein as granted by the St. Louis Court of Appeals. This, for the obvious reason that the Court of Appeals was precluded from taking any steps in the cause except to transfer it to this court. Its own record shows it had no jurisdiction, and such is the fact. The order granting leave was, therefore, *coram non judice.*

(b) In the next place, attending to the proceedings, *nisi,* subsequent to the appeal, it appears that record entries overruling the motions for a new trial and in arrest were reconstructed by enlargement so as to show that exceptions were saved to the action of the court. The saving of an exception by a record entry is without vitality for appellate use. It has always been held that an exception cannot be saved in that way for service on appeal. It must be saved in a bill of exceptions.

If the *original* entries had shown that exceptions were saved (even though such exceptions had no place there) a different question might be here. In such hypothetical condition of things, we shall not hold that the court might not have seized upon such entries as *evidence of the saving of exceptions,* and have used them as proper *data* to correct the bill by a *nunc pro tunc* entry. But no such question is here. Here the record entries showing the saving of exceptions were manifestly made subsequent to the settling and filing

of the original bill, and (as said) were mere parts of the general scheme to amend.

(c)   In the next place, from the character of the record entry of July 19, 1902, amending the bill of exceptions, it is seen to bear internal evidence of having been prepared by counsel. Subjecting it to a just analysis, it appears therefrom by necessary implication that the sole reliance of the court for the amendment inserting exceptions, was a standing rule of court to the effect that it was not necessary to save exceptions to such ruling—that *per contra,* they were deemed to be saved (*i. e.,* they saved themselves spontaneously).

If the entry in question had omitted all reference to the rule and had baldly found that the records of the court showed such exceptions were saved, then a somewhat different question might be here. In such case, by a plenary stretch of abounding judicial grace, extending quite to the fringe of things, there might be a faint presumption that proper contemporaneous *data* in minutes of clerk, judge or files existed and were put in evidence showing the saving of the exceptions, and furnishing a legal basis for a *nunc pro tunc* entry. But we do not decide the point. It is not clear to us how such *data* would reasonably exist. In State v. Gartrell, *infra,* this court doubted the possibility of their existence, saying in that behalf that: "It is too plain for argument that unless parol evidence could be resorted to there was nothing to show that such exception was taken, and when the bill of exceptions was filed and the term had lapsed, the record became a finality which neither court nor counsel, even by stipulation and consent, could change."

But the reference in the amending entry to the rule of court is of such sort as to entirely preclude such presumption; for the court bases the entry solely on the rule itself.

Of such a rule, we had this to say in Green v. Terminal R. R. Assn. of St. Louis, 211 Mo. 1. c. 34:

"That ruling [to-wit, a ruling that exceptions are presumed to be taken to all adverse rulings, though not noted at the time] is of doubtful value in the trial of a case, and ought to be of no force at all in an appellate court. Obviously, when a case reaches the point where a bill of exceptions is to be made, all exceptions intended to be relied on should be inserted in the bill. They cannot be hid under the cloak of an arbitrary presumption indulged below, and be got at by inference."

In this case the trial court by indulging in an arbitrary presumption arising as a *quasi* inference from a standing rule, altered a bill of exceptions in a vital matter. Analyzing that action, it will be seen that if the court was aided by memory it fell into a vat of error. So, if it relied on oral testimony, it so fell. But, as said, the entry conclusively shows that it relied on its rule. We are cited to no case holding that such amendment may be made as the result of mere argument and deduction from a standing rule, *nisi*. The good sense of the thing is strongly against that. To adopt that theory would open the door for all sorts of mischief to enter; for thereby an exception never made and never intended to be made could be read into the original bill—possibly on the inapplicable doctrine that equity considers that done which should have been done.

No one questions the abstract right, *nisi,* to correct a bill of exceptions by a *nunc pro tunc* entry. It has been steadily held that though a trial court has lost jurisdiction of a *cause* by appeal, it still retains enough jurisdiction of its *record* to make it tell the truth by such entry, keeping always in mind the sharp limitations on the right to make such entries. [Jones v. Ins. Co., 55 Mo. 1. c. 344; Exchange National Bank

v. Allen, 68 Mo. 474; DeKalb County v. Hixon, 44 Mo. l. c. 342; State v. Logan, 125 Mo. l. c. 25.] In Ross v. Railroad, 141 Mo. 390, the limitations on the power to make *nunc pro tunc* entries correcting a bill of exceptions were considered in the light of an array of cases reviewed. The sum of the matter was held to be that such correction could not be based on the memory of the judge nor on parol proof derived from other sources, nor on affidavits; but that to include an exception in an original bill of exceptions by way of amendment it must appear from the record of the cause either in the bill itself or in the judge's or clerk's minutes, or the stenographer's notes, or some paper in the case that such exception was made and saved at the very time.

State v. Gartrell, 171 Mo. 489, was a murder case. There, with the consent of the Attorney-General, the bill of exceptions was amended by a *nunc pro tunc* entry and, after discussing the right of the court to amend its record during the term and while its proceedings are *in fieri*, GANTT, P. J., continuing, said: "But after the lapse of the term, or its final adjournment, the judge has no power to change the record further than by *nunc pro tunc* entries to make the record speak the exact truth of that which actually did occur during the term, and then only when there is sufficient record of minutes of the judge or clerk to authorize such amendment, as it has been repeatedly ruled by the court that such corrections cannot be made 'from outside evidence or from facts existing alone in the breast of the judge, after the end of the term at which the final judgment was rendered.' [Citing cases.] It is true that the power of the court over its own records for the purpose of amending, correcting and completing the same is not affected by the fact that an appeal has been taken from its judgment. [Citing cases.] These are fundamental principles, and

again and again it has been decided by this court that when the period (beyond the trial term) granted by the court in which to file a bill of exceptions has expired, neither the court nor the judge in vacation can extend it, and what purports to be a bill of exceptions filed in pursuance of such a void order will not be considered by this court.'' [Citing cases.]

Now, it is too plain for question that what was done in this case had the effect of merely extending the time for filing a bill of exceptions after the date fixed had passed, a thing that cannot be done. [State ex rel. v. Gibson, 187 Mo. l. c. 549, et seq.] It was loosely concocting a bill of exceptions on what plaintiffs not inaptly call ''the installment plan.'' [See Priddy v. Hayes, 204 Mo. 358.]

The premises all considered, we hold that, as the original bill of exceptions neither contained the motion for a new trial or in arrest nor any call for such motions (see R. S. 1899, sec. 866), and as it contained no exception to the overruling of those motions, and as the amendment to the bill was improvidently made, we cannot consider any matter of exception. In effect, then, the bill of exceptions is so much waste paper. It results from this view that we may consider only the record proper.

III.  Attending to that, the petition states a cause of action. In effect, the pleadings bring the matter of reimbursing the Colps for the use of the sawmill before the chancellor. The decree shows that in *open court* plaintiffs offered such reimbursement as the price of their decree. The chancellor held on that issue that the use of the mill was of the reasonable value of $150, but, by inadvertence, the decree, though it adjudged that the Colps take the sawmill, omitted to adjudge to them the payment of said sum of money. We perceive no good reason why defendants should be dismissed from a court of equity without a decree giv-

ing them what the record proper shows is their equitable due. Why put them to another suit to enforce a right determined by this when equity has jurisdiction to end the matter?

Accordingly, the cause is reversed and remanded with directions to the lower court to enter a decree in favor of plaintiffs for the return and cancellation of the notes in question (describing them) and for the cancellation of the deed of trust (describing it) and removing the record cloud from plaintiffs' title and to adjudge that defendants, the Colps, not only take back the mill, but have and recover from plaintiffs the said sum of $150, as the price of their decree—the costs, *nisi*, to go against the Colps.

All concur except *Valliant. P. J.*, absent.