PETE O. NOREN, APPELLANT, v. AMERICAN SCHOOL OF OSTEOPATHY, A CORPORATION, RESPONDENT.*—2 S. W. (2d) 215.

St. Louis Court of Appeals. Opinion filed February 7, 1928.

*Corpus Juris-Cyc References: Agency, 2CJ, section 1, p. 419, n. 1; section 29, p. 434, n. 62; section 32, p. 436, n. 79; Appeal and Error, 3CJ, section 802, p. 899, n. 68; 4CJ, section 1936, p. 316, n. 26; section 1937, p. 317, n. 35, 37; section 2261, p. 502, n. 55; section 2814, p. 833, n. 53; Physicians and Surgeons, 30Cyc, p. 1574, n. 38; p. 1581, n. 14; p. 1588, n. 83, 88.

*C. D. Stewart* for appellant.

*S. H. Ellison* and *Higbee & Mills* for respondent.

BENNICK, C.—This is an action for damages for personal injuries, alleged to have been sustained by plaintiff, while receiving certain osteopathic treatments at the hands of one Elmer C. Abramson, a senior student of defendant, American School of Osteopathy, an institution located in the city of Kirksville, Missouri, and engaged in the business of teaching and practicing the science of osteopathy. A trial was had to a jury, resulting in a verdict for plaintiff in the sum of $3500. In due course, a motion for a new trial, filed by defendant, was sustained by the court, upon the ground of error in the giving and refusal of certain instructions, from which order plaintiff perfected his appeal.

The case is now before us on rehearing. Our first opinion, reversing the order granting a new trial, and remanding the cause with directions to reinstate the verdict of the jury and the judgment rendered thereon, was handed down on November 8, 1927, and was unofficially reported in 298 S. W. 1061. Subsequently, additional complications developed in the *status* of the case, in view of which it became necessary to reinstate and sustain defendant's motion for rehearing, and withdraw our former opinion. Thereafter, the case was reargued and resubmitted, whence follows the present opinion.

The order of the lower court, sustaining defendant's motion for a new trial, was based upon the ground of error in the giving of instruction No. 1 for plaintiff, and the refusal of instruction No. 5, requested by defendant. As the case first came to us, the bill of exceptions did not show that in either of such instances an exception had been saved by defendant to the adverse action of the court; but, inasmuch as no point was attempted to be made of such failure on the first submission of the case, our prior opinion was necessarily silent upon the question. However, pending resubmission, learned counsel for defendant, out of an abundance of caution, filed in the circuit court their motion asking that the bill of exceptions be amended

*nunc pro tunc,* so as to show that timely exceptions had, in fact, been saved. After a hearing on such motion, the court entered its order sustaining the same, from which plaintiff has appealed; and, by agreement of respective counsel, such appeal may be disposed of, togther with the appeal from the order granting the new trial, in this one opinion.

Addressing ourselves first to the propriety of the amendment *nunc pro tunc,* we observe that defendant, in support of its motion, and at the hearing thereon, asked the court to take judicial notice that, at the time of the trial of the case, it was the rule and practice of the court that all adverse rulings were to be regarded as excepted to by the party against whom such rulings were made, and that the stenographer, and the party preparing the bill of exceptions should show such exceptions as having been saved. While conceding that such rule and practice had been in effect, the court refused to take judicial notice of the fact. Thereupon, defendant sought to prove the rule by oral testimony, to which offer an objection was sustained. Finally, the motion for a new trial (reciting, in substance, that the court had erred in the giving of each and every instruction for plaintiff, and in the refusal of each and every instruction requested by defendant), together with the order of the court sustaining such motion for the reasons therein assigned, were introduced in evidence; and, it was solely upon the basis of such records that the court allowed the amendment to be made.

No extended discussion of the right of a trial court to amend its records in essential respects, so as to make them speak the truth, will be necessary. We observe in this proceeding that the court well understood that where, in an original bill, exceptions to adverse rulings were not noted as having been saved, the bill of exceptions cannot be amended after the end of the term (as was the case here), by an order *nunc pro tunc* to show the exceptions saved, unless such amendment is warranted by some record entry, or is evidenced by some written notation in the files. Thus, the amendment may not be made at a subsequent term upon matters resting merely in the memory of the judge, nor upon parol proof by others; but, to the contrary, something must appear in the bill itself, the judge's minutes, the clerk's entries, the stenographer's notes, or some proper paper in the case, to form the basis for the allowance of an amendment *nunc pro tunc.* [Manthey v. Kellerman Contracting Co., 311 Mo. 147, 277 S. W. 927; Ross v. Kansas City, F. S. & M. R. Co., 141 Mo. 390, 38 S. W. 926, 42 S. W. 957; Coy v. Landers, 146 Mo. App. 413, 125 S. W. 789; Brown & Biglow v. Heier (Mo. App.), 194 S. W. 1070; State ex rel. Cammann v. Tower Grove Turn Verein (Mo. App.), 206 S. W. 242; Ramsey v. City of Poplar Bluff (Mo. App.), 286 S. W. 159.]

It is equally well established that, where no exceptions were actually saved, and the bill recited no exceptions saved, the trial court is not authorized to amend the bill *nunc pro tunc* by reason of the fact that it had in force a rule which did not require exceptions to be saved, and to the effect that exceptions were deemed to be saved to any adverse ruling of the court. [Reed v. Colp, 213 Mo. 577, 112 S. W. 255; Green v. Terminal Railroad Ass'n, 211 Mo. 18, 109 S. W. 715; State ex rel. v. Tower Grove Turn Verein, supra.] In this connection, however, it is well to mention that the situation now confronting us must not be confused with that before the Supreme Court in the case of State ex rel. v. Miller, 241 S. W. 920, wherein the validity of such a rule was upheld. The distinction to be made between the two situations is apparent. The one is a case where the bill *shows no exceptions to have been saved,* and it is sought to have the bill amended by reason of the rule. The other is a case where the bill shows that exceptions were duly saved, but, nevertheless, the right of the appellate court to consider *what is actually disclosed in the bill* is questioned, on the ground that a rule permitting a blanket saving of exceptions to all adverse rulings is invalid, and in contravention of statute.

Manifestly, the discussion heretofore has been largely by way of elimination, and for the purpose of clarifying the issues. We are now brought directly to the question of whether, in contemplation of law, the motion for a new trial was such a paper in the case as to be the basis for the amendment allowed by the court. The answer must be in the negative. As a matter of fact, the motion for a new trial did not recite that exceptions had been saved by defendant to the giving and refusal of instructions; but, even if it had, the result would be the same, for the reason that *a statement in a motion as of a fact is not evidence of the thing stated.* Such is the undoubted rule. [Manthey v. Kellerman Contracting Co., supra; Dougherty v. Whitehead, 31 Mo. 255; Keet & Rountree Dry Goods Co. v. Williams (Mo. App.), 202 S. W. 620.]

Consequently, since that character of evidence was not introduced which could justify the correction of the bill, it follows that the order of the court allowing the amendment was improvidently made; and we are thus left to consider the appeal from the order granting a new trial in the light of the record as it was originally brought to us.

The peculiar feature of this case, however, is that, despite the unsuccessful efforts of defendant to have the bill of exceptions corrected in the manner sought, no right of review has been foreclosed to it, inasmuch as the trial court has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, *whether excepted to or not.* [Bradley v.

Becker, 296 Mo. 548, 246 S. W. 561; Manthey v. Kellerman Contracting Co., supra; Owens v. Kansas City, C. C. & St. J. Ry. Co. (Mo. Sup.), 201 S. W. 548, 550; Green v. Terminal Railroad Association, supra; Schuette v. St. Louis Transit Co., 108 Mo. App. 21, 82 S. W. 541; Richter v. United Rys. Co., 145 Mo. App. 1, 129 S. W. 1055; Nulton v. Croskey, 111 Mo. App. 18, 85 S. W. 644.]

The above authorities hold, as we read them, that it is only where the appellate court seeks to sustain the grant of a new trial *upon some ground not specified by the lower court* (the reason given by the latter having been found insufficient), that it is precluded from considering such other reason, unless an exception was saved by the complaining party at the time of the adverse ruling. Otherwise stated, in order that the respondent on appeal may have the benefit of errors assigned in his motion for a new trial, *but not designated by the trial court as grounds for sustaining the motion,* the record must show that the respondent duly excepted at the time to the rulings on which he predicates his assignments of error. Consequently, so far as concerns the giving of instruction No. 1 for plaintiff, and the refusal of instruction No. 5, requested by defendant, we are not only at liberty, but it is our duty, to review the propriety of the order granting the new trial, even though there were no exceptions saved, inasmuch as the court pointedly placed its ruling upon such grounds.

Directing our attention, therefore, to what we may term the merits of the case proper, we find that it was alleged in the petition, in substance, that, as a prerequisite to graduation from defendant school, Abramson, as agent and servant of defendant, was required to give a certain number of osteopathic treatments to members of the general public, under the direction and supervision of defendant; and that, while so treating plaintiff, Abramson unskillfully, carelessly, and negligently injured him.

The answer filed by defendant was a general denial.

The evidence disclosed that plaintiff became acquainted with Abramson in the fall of 1921, while the latter was engaged in giving osteopathic treatments to certain members of plaintiff's family. Plaintiff was aware that Abramson was not a graduate osteopathic physician, but that he was a student in defendant school, studying to qualify himself for the ultimate practice of his chosen profession. It appears that one of the requirements of the school leading to graduation was that each student, in his senior year, should administer two hundred treatments outside of the school, and an additional two hundred at the school's infirmary, to members of the general public. Such treatments were given under the direction of a member of defendant's faculty or staff, and were reported by the student to defendant on blanks supplied him for such purpose.

Prior to Abramson's personal connection with the case, plaintiff had been examined at the school proper, and had been told at the time that he was suffering from lumbago, a progressive disease which first manifests itself in the lower part of the back, and gradually extends higher. For this examination he paid the school the sum of two dollars. Subsequently, during one of Abramson's visits to plaintiff's home, he sought permission from plaintiff to treat him, which request was granted. Four or five days later Abramson returned, in company with Dr. Platt, a member of defendant's faculty, and the director in charge of the treatments required to be given by the students; and, after an examination of plaintiff conducted by both men, his ailment was again diagnosed as lumbago. After a conference with Abramson, Platt informed plaintiff that Abramson was competent to treat him, and the first treatment was, in fact, given by Abramson in Platt's immediate presence. Thereafter the treatments were administered at regular intervals by Abramson alone, until in March, 1922.

The particular treatment complained of was given some time in February, 1922. Upon such occasion, Abramson, after placing plaintiff upon the treating table, first manipulated his hips; and then, after taking hold of his head with both hands, twisted his head with such force as almost to throw plaintiff off of the table, causing his neck to crack with a loud noise, as a result of which plaintiff was caused to suffer very severe and permanent injuries.

There was evidence that an adjustment of the neck was not necessarily a treatment for lumbago, although occasionally, when a specific affliction was being treated, general treatments, in addition to treatments of the particular area affected, were also given; that extreme pressure would be required to dislocate the neck, as happened in plaintiff's case; that, in adjusting the neck, the proper method was to place the operator's hands underneath and to the sides of the neck, and not to place them under or upon the head, as Abramson did; and that to apply such force as to move the patient's body upon the table, and to give the head such a severe turn or jerk as to dislocate the neck, was not a proper osteopathic treatment.

Dr. Platt himself testified to the fact that Abramson was required to give certain treatments to patients, who were to be examined by a member of the faculty of the school; and that it was the duty of such faculty member to instruct the student as to the nature of the ailment, and to outline the exact manner in which the case should be treated. He admitted having examined plaintiff, and having given Abramson specific directions as to the course of treatment to be pursued; but stated that after the first treatment had been administered, he was not supposed to see plaintiff again, unless the treatments did not give relief, or some other complaint was made.

There was evidence offered on the part of defendant bearing upon its theory of defense, which tended to show that Abramson had reported certain of his treatments; but that he had not reported the one in February, 1922, inasmuch as he had at that time completed the number of treatments required of him by defendant.

Passing for the moment the matter of the instructions heretofore referred to, it behooves us first to direct our attention to the propriety of the peremptory instruction in the nature of a demurrer to the evidence, requested by defendant at the close of the whole case, to the refusal of which an exception was duly saved. It is obvious that the points upon which our decision as to the correctness of the lower court's ruling must turn are: First, whether there was sufficient evidence to justify submission to the jury of the question of Abramson's agency during the course of his treatment of plaintiff; and, second, whether there was proof of actionable negligence on the part of Abramson for which defendant would be liable to respond. In our consideration of the issues thus presented to us, we confess that our search has revealed no case, nor have counsel cited us to one, which could be regarded as being sufficiently similar on the facts to the case at bar as to be decisive of it. We are left, therefore, for recourse to fundamental principles of law, as they find expression in authorities of sufficient import to justify their citation herein.

With regard to the question of Abramson's agency for defendant, it is commonly understood that the term "agency," in its broadest sense, includes every relation in which one person acts for, or represents another, by the latter's authority. There is in general no particular mode in which an agency must be established; and it is immaterial what terms are used by the parties, or by what name the transaction is designated, if the requisite elements of such *status* are otherwise deducible from the facts taken as a whole. Furthermore, a relation of agency does not depend in every event upon an express appointment and acceptance thereof, but, to the contrary, it may be, and frequently is, implied from the conduct and words of the parties, and from the several circumstances of the particular case, when given a natural and reasonable construction. [Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492; American Railway Express Co. v. Scanlon (Mo. App.), 247 S. W. 254; Phillips v. Geiser Mfg. Co., 129 Mo. App. 396, 107 S. W. 471; 2 C. J. 435.]

Viewing the case in the above light, it occurs to us at the outset that the matter of requiring its senior students to give treatments to members of the general public was part and parcel of defendant's business, that of teaching the science of osteopathy; and that those persons, including plaintiff, who, for whatever reasons, submitted themselves to be experimented upon at the hands of de-

fendant's undergraduates, were, in reality, but so much laboratory equipment to be employed in enabling the students to meet the requirements laid down by defendant for graduation. In other words, in soliciting patients, upon whose bodies he might test out the technical and abstract learning he had acquired from the pages of his text books, it cannot be said that the student was engaged solely upon his own initiative, but rather that he was acting in a matter in which defendant had a vital interest as well.

We think it is undisputed that plaintiff, in agreeing to accept treatments at the hands of Abramson, understood that Abramson was but a student, and that the treatments were to be given in order to fulfill a requirement of defendant, although there is no proof that plaintiff was aware of any limitation that had been placed upon the total number of treatments to be administered in this manner. But, looking more particularly to the pertinent facts of the case, we observe that the diagnosis was not made by Abramson upon his own responsibility, but instead by him in conjunction with the member of defendant's staff having charge of all such activities of the student body. In so far as Abramson may have been in doubt as to the proper course to be pursued, the method of treatment was prescribed by the director in charge; and the first treatment was not allowed to be given until a consultation had been had between Abramson and Dr. Platt, and the latter had assured plaintiff that Abramson was competent to treat him. That Dr. Platt gave Abramson certain directions is admitted; nor did his responsibility end here. To the contrary, the conduct of Abramson thereafter remained under the watchful eye of defendant, as is shown by the fact that Abramson was required to report the constant progress of his work to defendant upon blanks supplied him for that purpose, as well as by the further admission of Dr. Platt that, in case Abramson's treatments had not given relief, or some other complaint had been made, it would have been his duty to have called upon plaintiff again. Thus plaintiff did not receive the general course of treatment that Abramson, of his own volition, saw fit to administer, but instead was given the treatment that defendant, as a corporate person engaged in teaching and practicing the science of osteopathy, deemed proper to be given at Abramson's hands in order to effect a cure in plaintiff's case.

We are well aware that the relation of principal and agent, or of master and servant, is not held to exist between two physicians where one is sent to treat the patient of the other, with the consent of the patient, and in pursuing his treatment acts wholly upon his own initiative, and without direction from the other. [Gross v. Robinson, 203 Mo. App. 118, 218 S. W. 924; Moore v. Lee, 109 Tex. 391, 211 S. W. 214.]

Such rule is entirely logical. However, by a parity of reasoning, the converse of the rule must apply with equal effect, so that, where (as is the case here), the element of substitution is not present, *and the one physician retains control·of the other as to the details of the treatment to be given, leaves nothing to the discretion of the attendant, and renounces no part of his functions as the sole physician in the case,* there is sufficient reason for holding that the relation of principal and agent does exist. Accordingly, from the facts in this case, as to which there is but little controversy, we cannot avoid the conclusion that there was substantial evidence from which a jury might properly have found that the relation of physician and patient existed between defendant and plaintiff, rather than between Abramson and plaintiff, and that Abramson was only the agent of defendant, through whose manual efforts the course of treatment prescribed by defendant was administered. So far as the actionable negligence in the case is concerned, there was substantial evidence from which it might reasonably be inferred that a treatment of plaintiff's neck in order to better his general physical condition was proper in connection with the treatment of the specific ailment from which he was suffering; that the method employed by Abramson for adjusting the neck was improper; and that the application by him of force sufficient to move plaintiff's body upon the table, and to produce a partial dislocation of a vertebra in plaintiff's neck, was unwarranted in the practice of osteopathy, and was a negligent act. Such being true, defendant was liable to be held to respond in damages to plaintiff for the injuries suffered by him through the negligence of Abramson, acting as its agent. [Atkinson v. American School of Osteopathy, 240 Mo. 338, 354, 144 S. W. 816; Atkinson v. American School of Osteopathy, 199 Mo. App. 251, 202 S. W. 452; Mullins v. Du Vall, 25 Ga. App. 690, 104 S. E. 513; Saucier v. Ross, 112 Miss. 306, 73 So. 49; Klitch v. Betts, 89 N. J. Law 348, 98 Atl. 427; Smith v. Swinehart, 209 Ill. App. 175; 30 Cyc. 581.]

Accordingly, in the light of what we have said above, we are constrained to rule that a case was made for submission to the jury, and that defendant's requested peremptory instruction in the nature of a demurrer to all the evidence was properly refused.

The sole assignment of error made by plaintiff is directed to the propriety of the action of the court in sustaining the motion for a new trial, upon the theory that error had been committed in the giving of instruction No. 1 for plaintiff, and the refusal of instruction No. 5, requested by defendant. These instructions follow:

"(1) You are instructed in this case that if you find and believe from the evidence that the defendant conducted its school of Osteopathy in the city of Kirksville, Missouri, during the two years of 1921 and 1922, and through its agents and servants taught and

practiced the science and system of osteopathy in said school during said years and you further find that one Elmer C. Abramson was a senior student in defendant's school during the years 1921 and 1922 and that said school directed and required said Abramson to give two hundred osteopathy treatments to patients outside the rooms of defendant's school and under the supervision and direction of a member of the faculty of said defendant's school and you further find and believe from the evidence that one Dr. Platt was a member of the faculty of said defendant's school and that said Platt examined the plaintiff and directed the said Abramson to treat plaintiff for lumbago and that said Abramson did thereafter under said directions of said Platt treat the plaintiff and while treating plaintiff negligently and carelessly produced a partial dislocation of one of the vertebrae in plaintiff's neck and by reason thereof injured plaintiff, then your verdict should be for the plaintiff.''

''(5) The court instructs the jury, that if you find and believe from the evidence in the cause that the witness Abramson had given all the treatments required by defendant school to be given prior to the giving by him of the treatment complained of by plaintiff, then your verdict must be for defendant.''

Manifestly the language we have employed in discussing the propriety of the submission of the case to the jury is, in large measure, equally appropriate to a consideration of the merits and demerits of the above instructions. So far as concerns plaintiff's instruction No. 1, we are of the opinion that it was within the purview of the pleadings and the evidence, and that it properly covered the entire case. It did not assume any controverted facts, as counsel contend; and, while it is true that it did not, in express terms, require the jury to find that the relation of physician and patient existed between plaintiff and defendant, or that Abramson was the agent of defendant, it did submit the facts upon a finding of which the law would say that such relationships did exist, with all of the attendant obligations. Nor can it be said that it failed to give the jury any guidance as to the specific act which, under the law, would constitute negligence, inasmuch as it plainly submitted the sole act pleaded and relied upon, namely, that Abramson had produced a partial dislocation of one of the vertebrae in plaintiff's neck.

With regard to defendant's refused instruction No. 5, we assume that it was requested by reason of Abramson's testimony that he had completed the required two hundred treatments, before the injury to plaintiff's neck was inflicted. It would seem that, by the language of such instruction, defendant should be held to have conceded that so long as Abramson was engaged in giving the treatments demanded of him by defendant, he was acting as defendant's agent, and that

during such time defendant would be answerable for his negligence. But aside from this, it is the undoubted rule that unless the terms of the employment of a physician limit the extent of his services, or a reasonable notice is given the patient that he will not undertake subsequent treatment, the relation of physician and patient continues until the doctor's services are no longer needed, unless ended by mutual consent, or revoked by dismissal. [Marshall v. Brown, 205 Mo. App. 390, 224 S. W. 13; Nash v. Royster, 189 N. C. 408, 127 S. E. 356; 30 Cyc. 1573.]

As has been heretofore stated, there is nothing in the record to indicate that plaintiff had been advised that any limitation had been placed upon the number of treatments to be given him by Abramson under the supervision and direction of defendant; nor had the relation of physician and patient been terminated, either by mutual agreement, or by dismissal. Consequently, in the absence of notice to plaintiff from defendant that the latter no longer assumed responsibility for the treatments given, it must be held that the relation theretofore established still continued, from which it follows that defendant's requested instruction No. 5, omitting the necessary element of notice to plaintiff, was properly refused.

While an appellate court is always less disposed to reverse an order granting a new trial than one refusing it, yet we must look the facts of each case plainly in the face; and, if we find that the lower court has based its ruling upon a misconception of the principles of law applicable to the situation at hand, we must unhesitatingly hold that it was in error in granting a new trial upon the grounds assigned by it. [Pyle v. University City (Mo. App.), 279 S. W. 217; Scott v. Kline's Inc. (Mo. App.), 284 S. W. 831.]

Accordingly, entertaining the views that have been herein expressed, the Commissioner recommends that as to the order of the circuit court sustaining defendant's motion to amend the bill of exceptions *nunc pro tunc*, the order be reversed, and the cause remanded with directions that the order be set aside; and that as to the order sustaining defendant's motion for a new trial, the order be reversed, and the cause remanded with directions to reinstate the verdict of the jury and the judgment rendered thereon, with interest from the date of the judgment as originally entered.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The order of the circuit court sustaining defendant's motion to amend the bill of exceptions *nunc pro tunc* is, accordingly, reversed, and the cause remanded with directions that such order be set aside; the order of the circuit court sustaining defendant's motion for a

new trial is reversed, and the cause remanded with directions to reinstate the verdict of the jury and the judgment rendered thereon, with interest from the date of the judgment as originally entered.

*Daues, P. J., Becker* and *Nipper, JJ.,* concur.