E. B. JONES MOTOR COMPANY, a Corporation (Plaintiff), Appellant-Respondent,

v.

Gilbert PULLEN and Bertram Ewing (Defendants), Appellants-

Respondents.

Nos. 29533, 29534.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Lowenhaupt, Mattingly, Chasnoff, Freeman and Holland, and Richard D. Fitzgibbon, Jr., St. Louis, for (plaintiff) appellant-respondent.

Alphonse J. Lynch, St. Louis, for (defendants) appellants-respondents.

MATTHES, Judge.

This appeal grows out of two cases which were consolidated and tried together.

The case of Bertram Ewing and Gilbert Pullen, plaintiffs, vs. E. B. Jones Motor Company and Mercantile Trust Company, defendants, originated in the Magistrate Court of the City of St. Louis, Missouri. Upon application of the E. B. Jones Motor Company, the venue was changed to the Magistrate Court of St. Louis County, Missouri. In this cause plaintiffs alleged that on September 9, 1953, they were lawfully possessed of a 1950 Dodge automobile; that on that date the defendants wrongfully converted the automobile to their use. They prayed for $1,500 actual, and $200 punitive damages.

The case of E. B. Jones Motor Company, plaintiff, v. Gilbert Pullen, defendant, also

originated in the Magistrate Court of the City of St. Louis, Missouri. Therein plaintiff sought a deficiency judgment on a note executed by Pullen. In that action the defendant filed a counterclaim setting up the identical cause of action pleaded by Bertram Ewing and Gilbert Pullen in their case against E. B. Jones Motor Company and Mercantile Trust Company. In time the venue of this action was also transferred to the Magistrate Court of St. Louis County, Missouri. Following a trial appeals were perfected and the cases reached the Circuit Court of St. Louis County, Missouri. Without objection by any of the parties, the two actions were consolidated by order of the Judge of Division No. 5 of said court and tried as one case. At the close of all the evidence the court sustained the motion of Mercantile Trust Company for a directed verdict, and sustained the motion of E. B. Jones Motor Company for a directed verdict as to Bertram Ewing's claim of conversion. The case was submitted to the jury on the claim of E. B. Jones Motor Company against Gilbert Pullen for a deficiency judgment and the claim of the latter for damages for conversion of the automobile. The jury found in favor of E. B. Jones Motor Company in the amount of $744.87, and also found in favor of Pullen on his counterclaim and awarded him damages against the E. B. Jones Motor Company for $1,200, resulting in a net award in favor of Pullen in the amount of $455.13. Upon this verdict the court rendered a judgment in favor of Pullen and against the Motor Company for $455.13. From this judgment the E. B. Jones Motor Company appealed, as did Gilbert Pullen and Bertram Ewing. Pullen makes no attack upon the deficiency judgment in favor of E. B. Jones Motor Company on its cause of action, but concerns himself solely with attempting to uphold his judgment for conversion of the automobile. Neither Pullen nor Ewing has raised any question concerning the court's action in dismissing Ewing's and Pullen's cause of action against the Mercantile Trust Com-

pany. Thus our consideration is narrowed to the judgment in favor of Pullen based upon the alleged conversion.

For the sake of brevity and convenience we shall hereafter refer to E. B. Jones Motor Company as plaintiff, Gilbert Pullen as defendant, and Mercantile Trust Company as Mercantile.

■ Plaintiff's first point is that a submissible case was not made on defendant's counterclaim, and that as a consequence the court erred in overruling its motion for a directed verdict as to the counterclaim. This contention is bottomed squarely on the proposition that neither defendant nor any one authorized to do so made proper and necessary demand upon plaintiff for return of the automobile. In considering this question we observe that an action in trover for conversion may be maintained by showing: (1) a tortious taking of the property; or (2) any use or appropriation to the use of the person in possession indicating a claim or right in opposition to the rights of the owner; or (3) refusal to give up possession to the owner on demand. Sigmund v. Lowes, Mo. App., 236 S.W.2d 14, 19; Citizens' Bank of Sikeston v. Scott County Milling Co., 210 Mo.App. 603, 243 S.W. 433; Detmer v. Miller, Mo.App., 220 S.W.2d 739, 744, 745; St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 88 S.W.2d 254, 261. It is also a firmly established principle that where a party comes into the possession of property lawfully or rightfully, a demand for its surrender is essential to constitute its further retention a conversion. Detmer v. Miller, supra; Citizens' Bank of Sikeston v. Scott County Milling Co., supra. Defendant does not dispute that the automobile came into plaintiff's possession rightfully, and he concedes that in this circumstance it was necessary for defendant to make demand for return of the automobile, indeed this element was submitted to the jury in the instruction offered by defendant which authorized a verdict on his counterclaim. While recog-

nizing that he did not personally demand surrender of the automobile, defendant nonetheless asserts this requirement of the law was met in that Bertram Ewing, while acting as defendant's agent, did make demand for return of the automobile. This theory is untenable and cannot be sustained because the facts considered in the light most favorable to defendant are wholly insufficient to permit a legitimate inference that an agency relationship existed between defendant and Ewing.

■ The record discloses that on June 5, 1953, the defendant purchased from E. B. Jones Bargain Center, Inc., plaintiff's predecessor in business, the Dodge automobile. To satisfy balance remaining due on the purchase price defendant executed his note for $1,500, payable to seller in twenty-four equal monthly installments of $62.50 each, due on the tenth day of each month, beginning July 10, 1953. A chattel mortgage of even date covering the automobile was also executed by defendant. The note and mortgage were sold by plaintiff to the Mercantile. Title to the automobile was duly registered in defendant's name, to whom a certificate of ownership was issued. In connection with the transaction a $50 deductible collision insurance policy was procured. Ewing, who is the nephew of defendant, was present when the automobile was purchased. Following consummation of the transaction, Ewing took possession of the automobile, and it is clear that thereafter the defendant did not in any respect concern himself with the automobile, neither did he attempt to control his nephew's conduct with respect thereto. The record is completely barren of evidence establishing that the automobile was used at any time by Ewing in behalf of defendant.

The payment due on July 10, 1953, was not made until after the automobile had been repossessed, following which, and on August 11, 1953, two payments totaling $125 were made by Ewing to Mercantile. During the latter part of August, 1953, and while being driven by Ewing, the automobile was involved in an accident. It was either taken by, or at the direction of, Ewing to plaintiff's auto and body shop for repairs. Ewing testified that on September 9, 1953, he went to plaintiff's shop for the purpose of taking possession of the automobile. We deem it unnecessary to detail what occurred at that time between Ewing and one Mr. Fitzhenry, a representative of plaintiff, other than to state that Ewing's testimony disclosed that he paid $50 to Fitzhenry, being the amount over and above the insurance company's contractual obligation toward the cost of repairing the automobile, and then demanded possession thereof. Notwithstanding his repeated demands, including, according to his testimony, an offer to pay the September 10th installment on the note, Fitzhenry steadfastly refused to surrender possession of the automobile. Of decisive importance, however, is the fact, admitted by both Ewing and defendant, that at no time did defendant personally make demand upon plaintiff for possession of the automobile. Rather, he remained completely aloof from plaintiff, as well as the repair transaction, although he learned on September 9th that the vehicle was then in the possession of plaintiff.

Following the failure of any one to make the payment of $62.50 due on September 10th, Mercantile, on the next day, wrote a letter to defendant, admittedly received by him, advising that it was accelerating the note, and demanded payment of $1,152.47, the balance due after payment of the $125, and credit of a refund due under the contract of $222.53. Upon failure of defendant to pay this amount, Mercantile repossessed the automobile, and notified defendant to that effect on September 21, 1953. In that notice defendant was advised that he could redeem the vehicle by paying the amount due prior to September 28, 1953. The defendant ignored this notice, and on the latter date Mercantile exercised its right under the terms of the assignment of the note and called upon plaintiff to repurchase the automobile.

This was done, and the note and mortgage reassigned to plaintiff. In time the automobile was sold under the terms of the mortgage, and since the amount received therefor was less than the balance due on the note, the action for the deficiency judgment followed.

■ Turning to the legal principles involved we find that "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' Restatement, Agency, § 1." Leidy v. Taliaferro, Mo.Sup., 260 S.W.2d 504, loc. cit. 505. See, also, Utlaut v. Glick Real Estate Co., Mo.Sup., 246 S.W.2d 760, loc. cit. 763. There is no particular mode or method which must be adhered to in order to create or establish agency. Regardless of the terms used by the parties, or by what name the transaction is designated, if the facts fairly disclose that one party is acting for or representing another, by the latter's authority the relationship of agency exists. Hawkins v. Laughlin, Mo.App., 236 S.W.2d 375, loc. cit. 380; Kaden v. Moon Motor Car Co., Mo.App., 26 S.W.2d 812; Noren v. American School of Osteopathy, 223 Mo.App. 278, 2 S.W.2d 215, 220.

■■ We have reached the opinion and hold that the facts in evidence and legitimate inferences to be drawn therefrom are so strongly against defendant on the vital and basic question of agency as to leave no room for reasonable minds to differ. Indeed, there is not a scintilla of evidence to establish that Ewing, in any of his actions with respect to the automobile, was acting in behalf of, and subject to the control of, the defendant. Rather, the conclusion is inescapable that Ewing's entire course of conduct was solely in his own behalf and for his own benefit. It must be kept in mind that the law indulges no presumption that an agency exists, and if an agency is to be implied from the facts in a given case, it must be implied from a natural and reasonable, and not from a forced, strained, or distorted construction of the facts, which would clearly be the result if we adopted defendant's theory. Kaden v. Moon Motor Car Co., supra, Mo.App., 26 S.W.2d 812, loc. cit. 814.

Having failed as a matter of law to establish that the relationship of principal and agent existed between defendant and Ewing, it necessarily follows that the demand of the latter for return of the automobile was of no consequence, and inasmuch as it is conceded that defendant, the owner of the automobile, made no effort to seek possession thereof, there was no conversion, and the judgment in favor of defendant for damages cannot stand. The judgment is therefore reversed and the cause remanded with directions to enter a judgment in favor of E. B. Jones Motor Company, and against Gilbert Pullen in the sum of $744.87, together with all costs.

ANDERSON, P. J., and JAMES D. CLEMENS, Special Judge, concur.