Philip A. BOYER, Respondent,

v.

**GRANDVIEW MANOR CARE CENTER, INC. and Vada Mae Eder, Appellants.**

**No. WD 41579.**

Missouri Court of Appeals,
Western District.

Jan. 8, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

Application to Transfer Denied
April 9, 1991.

**188**

George A. Barton, Watson, Ess, Marshall & Enggas, Kansas City, for appellants.

Brian Timothy Meyers, Kansas City, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Dr. Philip A. Boyer sued Grandview Manor Care Center, Inc. and Vada Mae Eder for tortious interference with a contract. In a trial held in 1987, the jury awarded Boyer $340 in actual damages and $300,000 in punitive damages against Grandview and $30,000 in punitive damages against Eder. Grandview and Eder filed a motion for new trial or judgment notwithstanding the verdict and the trial court granted a new trial.

On appeal to this court the grant of a new trial was reversed and the cause was remanded with directions to reinstate the verdict and to enter judgment in conformity with the pleadings.[1] *Boyer v. Grandview Manor Care Center, Inc.*, 759 S.W.2d 230 (Mo.App.1988). (*Boyer I*).

On remand, the trial court entered judgment on the verdict except that it entered judgment for a total of $130,000 in punitive damages because the court found that was the extent of the prayer for punitive damages. Grandview and Eder appealed following the entry of that judgment. That appeal eventually went to the supreme court which remanded the case to this court with directions to consider the contentions raised by Grandview and Eder that Boyer had failed to make a submissible case and that the imposition of punitive damages was unconstitutional because such damages were imposed in violation of the constitutional right to due process of law. *Boyer v. Grandview Manor Care Center, Inc.*, 793 S.W.2d 346 (Mo. banc 1990). (*Boyer II*). This case is now before this court on the issues of submissibility of Boyer's case, the constitutionality of imposition of punitive damages and the correctness of the entry of judgment for $130,000 punitive damages. Affirmed as modified.

Boyer was a physician who in his later years established a geriatric practice. He had a number of patients in various nursing homes and because of that had become acquainted with Eder who was an RN and a nursing home administrator. When Grandview opened, Boyer recommended Eder to be the administrator and she was hired. Boyer was named the medical director of Grandview.

Boyer testified that by state regulations each nursing home is required to have a medical director who is a physician. The medical director sits on various committees having to do with patient management in the nursing home and also serves as an advisor to the director of nursing and the administrator of the home about any problems which have medical implications.

Boyer testified that state regulations also require that each patient in a nursing home have a personal physician. He stated

1. The punitive damages awarded were in excess of the prayer.

that frequently physicians who have treated a person who goes to a nursing home do not want to follow the person in the nursing home and for that reason many patients do not have a physician when they enter the home. Boyer stated that in those instances the nursing home would recommend a physician which would usually be the medical director, or as was sometimes referred to, the house physician. Boyer drew a distinction between the nursing home medical director, or house physician, and the attending physician. The duties of the medical director are described above and the attending physician is the personal physician of the patient. Although the medical director, or house physician, may be the attending physician for many patients in a nursing home, it is not uncommon for other physicians to have patients in a nursing home.

Boyer testified that in early 1983, his services as attending physician for a large number of patients in Grandview were terminated by family members of the patients. Boyer knew of no reason for this but suspected that Eder's attitude toward him had changed. In April 1983, Boyer wrote a letter to Eder and told her that he was resigning as house physician and medical advisor, but stated that he intended to continue as the attending physician "for any loyal patients who wished to remain under my professional care until he was notified by the family that they desired to discharge him."

This case was submitted on a single incident of tortious interference. Boyer was the attending physician for Elizabeth Clegg and Rebecca Estes was an LPN who was taking care of Clegg. Estes testified that Clegg developed an upper respiratory infection and she told Boyer, who ordered some new medication. Estes stated Clegg got worse over the weekend and when Estes returned to work on Monday morning she told Eder that she was going to notify Boyer of the change in Clegg's condition. She testified that Eder told her that was not necessary and for Estes to get the family on the telephone and "we'll change physicians."

Estes stated that she called the family and put the person on hold and requested Eder to talk to the family member. She stated that Eder told the family member that Boyer had refused to order antibiotics that was a necessary treatment for Clegg and Eder felt the family should change physicians. Estes stated that Boyer had not refused to order antibiotics. The family immediately discharged Boyer as the attending physician for Clegg. The daughter of Clegg testified by deposition that someone from Grandview had called her and said that Boyer refused to order antibiotics for her mother and she discharged him as her mother's physician.

Eder testified that she never spoke to any family member of Clegg and denied that she had made any statement about changing physicians for Clegg.

■ Grandview and Eder first contend that the court erred in denying their motion for judgment notwithstanding the verdict because Boyer failed to make a submissible tortious interference case. The argument contends that Boyer's only claim was a breach of contract claim against Grandview and that Boyer failed to show the absence of justification for the alleged interference. In deciding whether Boyer made a submissible case this court must consider the facts in the light most favorable to Boyer. *Smith v. Gravois Rest Haven, Inc.,* 662 S.W.2d 880, 881–82[1] (Mo.App.1983).

Grandview and Eder argue that Boyer's only cause of action is a breach of contract action against Grandview. Clearly such argument is misplaced because Boyer never contended that he had a contract with Grandview which had been interfered with. Boyer testified that he had resigned as medical director, or house physician, and thus had severed any contractual relationship which he had with Grandview. The only claim made by Boyer was that Eder had tortiously interfered with his physician-patient relationship with Clegg.

■ Grandview and Eder also contend that whatever relationship Boyer had with Clegg was created only by Grandview's assignment of Clegg to him as her physician. This argument flies in the face of

Eder's own testimony in which she was asked about assigning Clegg to Boyer and she stated that assignment was not the right term. From the evidence it is clear that Grandview did not assign patients to physicians but only recommended physicians to patients and family members. Eder in her own testimony made it clear that family members for the patients actually contracted with the physicians for the care and treatment of a patient.

▆ The parties also contend Boyer's relationship with Clegg was vague and indefinite. On the contrary, Eder's testimony was that Boyer was the attending physician for Clegg. There is nothing in the evidence to indicate Boyer's relationship with Clegg was vague and indefinite.

In *Boyer v. Independence Manor Care Center, Inc.,* 721 S.W.2d 246, 248[1, 2] (Mo. App.1986), this court quoted from *Noren v. American School of Osteopathy,* 223 Mo. App. 278, 2 S.W.2d 215, 222[15] (1928), to the effect that the relationship of physician and patient continues until the physician's services are no longer needed or until they are ended by mutual consent or the physician is dismissed. In view of that rule it cannot be said that the relationship between Boyer and Clegg as physician and patient was vague and indefinite. Further, Clegg was required to have a personal physician and the evidence is beyond dispute that Boyer was the only physician she had at the time Estes testified that Eder talked with the family member about changing physicians.

▆ Grandview and Eder next contend that Boyer failed to prove an absence of justification for Eder's acts. The contention is that patients were primarily cared for by the nursing staff, which was responsible for the patient's care, and that Boyer's contact with patients was at best peripheral and certainly secondary to the everyday contact between the patient and the nursing staff. From this they argue that they had a right to protect their own economic interest in the treatment of residents in the home.

What has already been said largely disposes of this contention. Clegg was re-quired to have a personal physician and there was no dispute that Boyer was Clegg's physician. The argument that Boyer's relationship with Clegg was peripheral because the nursing staff took care of Clegg is spurious. Clegg was required to have an attending physician and only a physician could prescribe most medications that patients required and only a physician could be responsible for the care of the patient under state regulations. There was no evidence that Grandview's economic interest was affected in any way by reason of Boyer acting as attending physician for Clegg.

The evidence clearly shows that Eder interfered with the contractual relationship between Boyer and Clegg without any justification whatever and the jury could find that Eder was motivated by malice toward Boyer when she told the family member of Clegg that Boyer had refused to prescribe antibiotics. There was ample evidence from which the jury could find an absence of justification for Eder's conduct.

▆ Grandview and Eder next contend that the court erred in overruling their motion for judgment notwithstanding the verdict on the punitive damage claim because there was no evidence that the conduct of either Grandview or Eder was outrageous.

This argument is based on the holding in *Burnett v. Griffith,* 769 S.W.2d 780, 789[12] (Mo. banc 1989), in which the Court changed the verdict director for punitive damages in cases involving intentional torts. The Court held that the proper submission for punitive damages in an intentional tort case is that the defendant's conduct "was outrageous because of defendant's evil motive or reckless indifference to the rights of others...." *Id.* Grandview. and Eder argue that the verdict director submitting punitive damages was erroneous because it did not contain the language mandated in *Burnett.*

Obviously, *Burnett* was decided about two years after this case was tried and no one could have known that the *Burnett* decision would be forthcoming. More im-

portant, there was no objection to the evidence or to the punitive damage instruction during the trial or in the motion for new trial. In that posture the present contention has not been preserved for review. *Burnett v. Thrifty Imports, Inc.*, 773 S.W.2d 508, 512[4] (Mo.App.1989).

■ Grandview and Eder next contend that the award of punitive damages constitutes a taking of their property without due process of law in violation of their constitutional rights under the United States and Missouri Constitutions. That contention likewise has not been preserved for review.

The petition alleged the facts surrounding the tortious interference with Boyer's contract with Clegg and alleged that he was entitled to both actual and punitive damages. Grandview and Eder filed an answer but did not raise any constitutional question or issue. Further, during the trial no mention was made of a constitutional issue or the violation of any constitutional right. A motion for directed verdict at the close of the plaintiff's evidence was filed and again no mention of a constitutional right or violation was made. The same was true of the motion for directed verdict filed at the close of all of the evidence.

The court conducted an instruction conference on the record in which all of the instructions were mentioned and again Grandview and Eder made no mention of any constitutional claim or violation.

The first and only mention of a constitutional challenge to punitive damages was in the motion for new trial. In *Callier v. Director of Revenue*, 780 S.W.2d 639, 641[1, 2] (Mo. banc 1989), the Court stated that constitutional issues are raised only when they are presented in accordance with rules of long standing. The Court stated that among these rules is the requirement that the constitutional question be presented at the earliest possible moment that an orderly procedure would admit. In *Bauldin v. Barton County Mut. Ins. Co.*, 666 S.W.2d 948, 951[3, 4] (Mo.App. 1984), the court referred to the rule that a constitutional claim must be raised at the earliest opportunity and properly preserved and held that the failure to file a reply to an amended answer in order to raise a constitutional issue waived the right to raise the constitutional issue.

Here, Grandview and Eder failed to even mention the violation of a constitutional right until the motion for new trial. Clearly those parties did not raise the constitutional issue at the earliest opportunity and made no effort to preserve their constitutional claim during trial. For that reason the constitutional issue concerning punitive damages has not been preserved for review.[2]

■ Grandview and Eder finally contend that on remand the court erred in entering judgment against them for punitive damages in the amount of $130,000. As noted, the verdict was for $300,000 in punitive damages against Grandview and $30,000 against Eder but the court found that the award exceeded the prayer. The court entered judgment for $100,000 against Grandview and $30,000 against Eder.

The prayer for punitive damages read "plaintiff is entitled to punitive damages from Grandview Care Center and Vada Mae Eder in the amount of $100,000...." The prayer did not ask for any other sum in punitive damages and plainly prayed for a total of $100,000 from both Grandview and Eder. The court should have entered judgment for punitive damages in the total

2. The court in *Boyer II* stated that it appeared from the record that Grandview and Eder had preserved their constitutional claim in their motion for judgment notwithstanding the verdict. 793 S.W.2d at 348[3]. As pointed out herein, the claim was raised in that motion. However, the rules stated in *Callier* require the claim to be raised at the first opportunity that orderly procedure would allow. It is that dereliction, and the failure to preserve the issue throughout the trial, that prevents the issue from being preserved. The court in *Boyer II* did not make an exhaustive exploration of the preservation question, nor did it need to. As explained in detail herein, Grandview and Eder failed to comply with well established rules for the preservation of constitutional questions and for that reason the constitutional issue has not been preserved for review.

sum of $100,000 and not the total sum of $130,000.

The judgment is affirmed but this case is remanded with directions to modify the judgment by awarding Boyer the sum of $90,000 in punitive damages against Grandview and $10,000 in punitive damages against Eder. Costs are assessed as 75% against Grandview and Eder and 25% against Boyer.

All concur.